No. 2-08-1117     Filed:  4-9-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--2159 |
| PATRICK BURTON, | ) ) ) | Honorable Robert B. Spence, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

Following a bench trial, defendant, Patrick Burton, was convicted of aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(ii) (West 2006)) and sentenced to two years' probation. Defendant appeals, contending that (1) he was not proved guilty beyond a reasonable doubt; and (2) the trial court erred in admitting as a spontaneous declaration a statement the victim made in a telephone call to her father.  We affirm.

At trial, the victim, S.P., testified that she was born on December 21, 1991.  In March 2007, she was living in Elgin with her father, her 12-year-old brother, her uncle, and defendant.  On March 31, 2007, at about 1 p.m., she and defendant were the only ones home.  Her father and uncle were at work, and her brother was at her aunt's home in Sycamore.  S.P. had been upstairs in her room, but came down to use the bathroom.  While downstairs, she picked up a cell phone.  Defendant followed her upstairs to her bedroom, asking her who she was calling.  Defendant pushed her onto

the bed, where she landed on her back. Sitting on her, defendant held her hands with one of his, put his other hand inside her shirt, and touched her breast under her bra.

S.P. testified that the occurrence lasted "a couple of seconds," but later estimated that it lasted about 30 seconds. During this time, defendant did not say anything, and S.P. was squirming while trying to get away. S.P. got free, ran into her brother's bedroom, and held the door shut. Defendant was in the hallway, saying that he was sorry and that they needed to talk. She told him to just go away. She heard defendant go downstairs. About 20 minutes later, he left in his truck.

About five minutes after the incident, S.P. went back to her own room. She called her aunt to ask when her brother would be home, but did not mention the incident. She tried unsuccessfully to phone her mother, then called her father at work. She told him that defendant had put his hand up her shirt. She was crying. Before that day, defendant had never made any sexual advances toward S.P. or made any improper remarks to her.

S.P.'s mother did not live with her, but had visited for a couple of weeks during the holidays. Defendant was critical of S.P.'s mother, and S.P. resented it. She had told her father that she wanted to live with her mother or her grandparents.

Darren P. testified that he is S.P.'s father. He had known defendant since they were in middle school together, and defendant had lived at his home for three or four years. Defendant helped Darren with the children and assumed "some parental authority." On March 31, 2007, Darren was at work. He came home for lunch at about 11:15 a.m. and saw defendant watching television in the living room. At about 1 p.m., he received a call from S.P. She was crying and hysterical, saying that defendant had tried to put his hand up her shirt. He returned home and brought S.P. back to work with him. He called defendant, who said that he did not know what Darren was talking about.

S.P.'s mother, Kim Bandelow, testified that she stayed at Darren's home for about a week during the holidays. Both Darren and defendant were critical of her returning.

Patricia Anderson, defendant's girlfriend, testified that defendant came to her house about 2:30 p.m. on March 31, 2007, and began watching television. Defendant's cell phone rang. He said, "What," and then left the room agitated. Anderson testified that S.P. often resented defendant.

Defendant testified that he received a phone call from Darren advising him of S.P.'s allegations. During the morning of March 31, 2007, he was at home watching television. There was nothing eventful about the day. Darren was home for lunch from 11:15 to 11:45 a.m. After he left, S.P. came downstairs to use the bathroom. She ignored defendant when he asked if she was going to do the dishes. Defendant started the dishes and saw that Flor Ruiz, who lived a couple of doors away, had returned home. He changed into his work clothes and walked to her house to talk about some work he was doing there. He went to the home of another customer at about 2 p.m., then went to Anderson's residence. Defendant denied molesting S.P. He testified that S.P. did not like him. He was responsible for ensuring that Darren's rules were enforced in Darren's absence, and he had had some "abrasive" conversations with her.

The trial court found defendant guilty. After denying his posttrial motion, the court sentenced him to 24 months' probation with 30 days in the county jail. Defendant timely appealed.

Defendant first contends that he was not proved guilty beyond a reasonable doubt. This argument has two components. Defendant first maintains that the State failed to prove beyond a reasonable doubt an element of the offense: that he performed the act for the purpose of his sexual gratification or arousal.

Defendant was convicted of aggravated criminal sexual abuse. As charged here, the statute defines the offense as an accused who is at least 17 years old committing "an act of sexual conduct

with a victim who was at least 13 years of age but under 17 years of age when the act was committed and the accused used force or threat of force to commit the act." 720 ILCS 5/12--16(c)(1)(ii) (West 2006). " 'Sexual conduct' " means "any intentional or knowing touching or fondling by the victim or the accused *** of the sex organs, anus or breast of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12--12(e) (West 2006).

Where a defendant challenges the sufficiency of the evidence on appeal, the relevant question is whether, after viewing all the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. People v. Cunningham, 212 Ill. 2d 274, 278 (2004). A reviewing court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony. People v. Campbell, 146 Ill. 2d 363, 375 (1992).

The intent to arouse or satisfy sexual desires can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct. People v. Balle, 234 Ill. App. 3d 804, 813 (1992). A defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act. See People v. Bailey, 311 Ill. App. 3d 265, 267 (2000) (victim awoke from a nap and discovered defendant with his hand between her legs, rubbing her vagina through her jeans); People v. Westpfahl, 295 Ill. App. 3d 327, 334 (1998) (defendant touched the victim's breasts); Balle, 234 Ill. App. 3d at 807, 814 (defendant touched the victim's vagina).

People v. Goebel, 161 Ill. App. 3d 113 (1987), is particularly similar to this case. There, the defendant intentionally touched the breast of a nine-year-old girl. In affirming the conviction, the court stated, "We find it thoroughly reasonable to infer from such touching *** that defendant intended to gratify or arouse himself sexually." Goebel, 161 Ill. App. 3d at 125. Here, defendant

reached under the shirt of a 15-year-old girl who was struggling to get away from him and touched her breast inside her bra. Like the Goebel court, we think the trial court could reasonably find solely from the nature of the act that defendant intended to arouse or gratify himself sexually.

In his reply brief, defendant notes that in Balle and Westpfahl the defendants also made statements expressing their sexual intent. However, it does not appear that the statements were crucial to the courts' opinions. In Bailey and Goebel there was no significant additional evidence of intent, and the courts inferred the requisite intent merely from the nature of the acts.

Defendant cites dicta from two supreme court cases in an attempt to show that there is a distinction between sexual penetration, which is inherently sexual, and any touching short of penetration, which can never be inherently sexual. See People v. Kolton, 219 Ill. 2d 353 (2006); People v. Wilson, 214 Ill. 2d 127 (2005). We agree with defendant that certain types of touching are not necessarily sexual, so that additional proof of a defendant's intent may be required. However, we do not agree that there is a bright line between sexual penetration and all other types of "touching." The cases cited above demonstrate that numerous types of touching short of penetration are considered inherently sexual.

Kolton and Wilson do not require a different result. Kolton held that an indictment alleging sexual penetration need not specifically allege that it was done for the defendant's sexual gratification, as the court could reasonably infer the requisite intent from the nature of the act. Kolton, 219 Ill. 2d at 370. In reaching this conclusion, the court commented that, by contrast, sexual conduct could include simple touching, either directly or through clothing, of any part of the body. Such touching, the court observed, "is not inherently sexual and might occur accidentally or inadvertently." Kolton, 219 Ill. 2d at 370. We do not read this as a statement that touching short of penetration can never be deemed inherently sexual. It merely reflects the reality that the broad definition of "sexual

conduct" in section 12--12(e) includes some conduct that could be accidental or inadvertent. Thus, for purposes of an indictment, the State must allege that the conduct was for the purpose of the defendant's sexual arousal or gratification.

In Wilson, the court held that other-crimes evidence was admissible to show the defendant's intent in touching a young girl's breast. The court observed that aggravated criminal sexual abuse, as it was charged there, "is a specific-intent crime--the State must show defendant intentionally or knowingly touched the victim on the breast for purposes of sexual gratification" and that the defendant's intent was automatically at issue in such a case. Wilson, 214 Ill. 2d at 137. Wilson did not address the issue here, whether a defendant's intent can be proved from the nature of the act itself. Thus, Wilson is inapposite.

After the briefs were filed, we granted defendant's motion to cite People v. Ostrowski, 394 Ill. App. 3d 82 (2009), as additional authority. Consideration of Ostrowski, however, actually reinforces the conclusion that the trial court could properly infer defendant's intent from the nature of the act itself. In Ostrowski, the defendant was convicted of aggravated criminal sexual abuse after he was seen kissing his four-year-old granddaughter on the lips at a community festival. A divided panel of this court reversed the conviction. The majority noted that the act of kissing another person on the lips is not inherently sexual. Ostrowski, 394 Ill. App. 3d at 93-94. Moreover, the majority found that consideration of the additional evidence supported a finding that the defendant's intent was not sexual. Ostrowski, 394 Ill. App. 3d at 93. The majority distinguished People v. Calusinski, 314 Ill. App. 3d 955 (2000), where the defendant "French-kissed" the victim. The court there noted that " 'French kisses' " are inherently sexual. Ostrowski, 394 Ill. App. 3d at 93, citing Calusinski, 314 Ill. App. 3d at 962.

Defendant's act of touching the victim's breast is more like the "French kiss" in Calusinski than the kissing at issue in Ostrowski. While people may frequently kiss platonically, touching a female's breast generally carries a sexual purpose. The only possible exception is a medical examination, and defendant does not contend that he was medically examining the victim. Cf. People v. Ikpoh, 242 Ill. App. 3d 365, 383 (1993) (fact finder reasonably rejected expert testimony that defendant's acts could have been part of legitimate medical procedure). Defendant's suggestion that his actions could have been a misguided attempt at discipline, besides being inherently farfetched, is unsupported by any evidence.

Defendant's second "reasonable doubt" contention is that the victim's testimony was inherently incredible. Defendant does not explain why the victim's testimony was unworthy of belief. He does not point to any inconsistencies or omissions, or to anything that is contrary to human experience. He argues that the victim's testimony was "vague" because she omitted details such as what part of his hand defendant used and what part of her breast he touched. These are not really details a 15-year-old would be expected to focus on. Her description of the incident and surrounding events was fairly detailed.

Defendant's primary argument under this issue is that the victim had a motive to fabricate the allegations against defendant. However, the trial court was aware that defendant and the victim did not get along, that the victim apparently resented that defendant was living in her home but her mother was not, and that the victim would have preferred to live with her mother. Nevertheless, the court found her testimony credible, and we see no reason to disturb that finding. The victim's testimony was clear and articulate, and the court could reasonably credit it against the defense's contrary evidence.

Defendant further argues that the trial court did not correctly remember the evidence. Defendant mentions several points; all are minor and collateral to the central issue of defendant's guilt. Some are simply a matter of semantics. Defendant complains, for example, that the trial court referred to evidence that the victim's mother had stayed with her for an "extended period of time," while S.P. and her father testified that she stayed only "during the holidays." S.P. testified that her mother was there for about two weeks, which the court could reasonably find was an "extended period" for a houseguest.

Defendant also argues that the evidence of S.P.'s prompt complaint to her father does not corroborate her account of the offense because her father testified that she said that defendant "tried" to put his hand under her shirt. Given that S.P. was "hysterical" at the time, Darren could have misunderstood what she said. Moreover, we note that a "try" can be successful. Thus, the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

Defendant's second principal argument is that the trial court erred by admitting evidence of the phone call to Darren. The State responds that the evidence was properly admitted as a spontaneous declaration.

Defendant concedes that he did not contemporaneously object to this evidence or include the issue in a posttrial motion and that this normally results in forfeiture of the issue. People v. Enoch, 122 Ill. 2d 176, 186-88 (1988). However, defendant contends that the issue is reviewable for plain error or, alternatively, that his attorney's failure to object to the evidence was ineffective assistance.

A reviewing court may consider a forfeited error under the plain-error rule when "the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or when "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." People v. Herron, 215 Ill. 2d 167, 178-79 (2005). As the supreme court explained,

the "closely balanced evidence" prong of the plain-error doctrine "guards against errors that could lead to the conviction of an innocent person," while the substantial-rights prong "guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial." Herron, 215 Ill. 2d at 186. In order for plain error to exist, however, we must first determine if an error actually occurred. People v. Naylor, 229 Ill. 2d 584, 593 (2008).

For a hearsay statement to be admissible under the spontaneous-declaration exception, there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence. People v. Sutton, 233 Ill. 2d 89, 107 (2009); People v. Williams, 193 Ill. 2d 306, 352 (2000). Courts use a totality-of-the-circumstances analysis to decide whether a hearsay statement is admissible under the spontaneous-declaration exception. Williams, 193 Ill. 2d at 352. This involves considering several factors, including the passage of time, the declarant's mental and physical condition, the nature of the event itself, and whether the statement is in the declarant's self-interest. Sutton, 233 Ill. 2d at 107. The time that may pass without affecting the admissibility of a statement varies greatly; the critical inquiry is whether the statement was made while the excitement of the event predominated. Sutton, 233 Ill. 2d at 107.

We agree with the State that the trial court properly admitted the statement. The first and third criteria are clearly met here. Moreover, it appears that S.P. made the statement while the "excitement of the event predominated." S.P. testified that she was crying during the conversation. Her father testified that she was crying and hysterical.

Defendant argues that the phone call was made 23 minutes after the incident and that, in the interim, S.P. called her aunt to find out when her brother would be home and tried to call her mother. Twenty-three minutes is not a particularly long time. In Sutton, the victim's statement made in an

ambulance 20 minutes after the event was admissible. <u>Sutton</u>, 233 Ill. 2d at 109. Much longer periods have been held not to destroy spontaneity. See <u>Ikpoh</u>, 242 Ill. App. 3d at 388 (one hour). Moreover, it is not unreasonable that S.P. would have made an innocuous phone call first--especially given her testimony that she did not hear defendant's truck leaving the house until about 20 minutes after the incident. All the evidence showed that when she called her father, the excitement of the event predominated.

As the statement was properly admitted, we do not find plain error, and counsel's failure to object to the evidence was not ineffective.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

O'MALLEY and JORGENSEN, JJ., concur.