2023 IL App (2d) 220060-U
No. 2-22-0060
Order filed January 12, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-624 |
| JOSE RODRIGUEZ-DELGADO, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  There was sufficient evidence to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse. Therefore, we affirm.

¶ 2    Following a bench trial, defendant, Jose Rodriguez-Delgado, was convicted of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2018)) and sentenced to 24 months of sex offender probation. On appeal, he argues that he was not proven guilty beyond a reasonable doubt because there was no evidence that he touched C.D. for the purpose of his own sexual arousal. We affirm.

¶ 3                                I.  BACKGROUND

¶ 4     On May 11, 2020, defendant was charged by indictment with one count of criminal sexual assault (720 ILCS5/11-1.20(a)(3) (West 2018)) (count I) and four counts of aggravated criminal sexual abuse (counts II through V). All of the charges alleged that on or about January 1, 2015, to December 27, 2019, defendant committed an act against C.D., a family member under 18 years old. Count I alleged sexual penetration for putting his mouth on her sex organ. Count II alleged that he placed his hand on her sex organ for the purposes of sexual arousal or gratification, and counts II through IV alleged that he put his hand on her breast for the purposes of sexual arousal or gratification.

¶ 5     Defendant's bench trial began on August 16, 2021. Gilma Castillo, defendant's wife, provided the following testimony. They had four children together, the eldest of whom was C.D. C.D. was born on June 1, 2004, and at the time of the trial was 17 years old. Throughout the time in question, the family was living on Berkshire Road in Carpentersville, Illinois, and C.D. was between 8 and 10 years old. Castillo worked the nightshift, beginning in the evening and finishing at 2 or 3 a.m., during which times defendant would usually be home with the children. At some unspecified time between 2015 and 2019, Castillo and defendant found some inappropriate sexual texts on C.D.'s phone. Around the same time, C.D. told Castillo (outside defendant's presence) that defendant had touched her. When Castillo confronted defendant about it, he said that because of the texts, he was providing C.D. sexual education and teaching her about her private parts. He said "he was just teaching her that she [was] not supposed to let no one touch her, not even me." Defendant said that he touched her but that he "pointed that nobody [was] supposed to touch her there or anywhere on her body because they're just going to hurt her." Castillo told defendant that "anything that he wanted to teach the kids, he need[ed] to let [her] know."

¶ 6     C.D. later brought another incident to Castillo's attention, and Castillo asked defendant if he had licked C.D.'s vagina while she was in the shower. Defendant said that it never happened, that C.D. was lying, and that she might have dreamt it. He also said he might have been too explicit when talking to C.D. After both of the conversations, defendant apologized to Castillo. He said that he was sorry and had just been trying to teach C.D. that she was not supposed to let anyone touch her and was not supposed to be texting. C.D. was present during one of the apologies. About three weeks after these conversations, Castillo again found sexual texts on C.D.'s phone.

¶ 7     On December 28, 2019, Castillo went to the police department with the children to file a police report. The day before, she had gotten into an argument with defendant and was afraid of being kicked out of the home, not having money to support herself, and losing custody of the children. Castillo and the children stayed out of the house for three days but then went back to the family home because defendant had moved out.

¶ 8     C.D. testified as follows. About the time she was in middle school and the family was living on Berkshire Road, defendant was trying to warn her about what boys could do if she was not careful. He would "gesture" or "point at the area and say that [she] shouldn't let people touch [her] in that area," and he would "touch it sometimes." The touching happened more than one time. It occurred when her siblings were at home but Castillo was at work. Defendant would touch her chest area but not her breasts, and he touched her between her legs, where she "peed." "He never touched that area specifically, but anywhere near." It was a "light" touch with his hand, "[a]lmost like he was pointing towards it" and lasted "for about a second." They were both fully clothed during these incidents, and they occurred after he had discovered sexual conversations with boys on her phone and was explaining what boys would want to do to her. If C.D. got uncomfortable, she would excuse herself by saying that she needed to finish her chores or go to the bathroom.

Defendant had apologized to C.D. when Castillo was present. However, he had also told C.D. not to tell Castillo because "she would think that it was something bad and would send him to jail." C.D. acknowledged telling an investigator that defendant touched her "down there one time."

¶ 9 There was another incident where defendant entered the bathroom when she exited the shower, and he used his tongue to touch the area where she "pee[d]." "It felt like it was real," but C.D. thought that it was a dream that she had. She did not believe that defendant actually did that to her after a shower, and he had denied doing so. C.D. believed that the other incidents where he touched her were real and were not dreams.

¶ 10 Timothy Bosshart, an investigator with the Kane County Child Advocacy Center, testified that he interviewed defendant during the investigation. An audio recording and a 22-page transcript of the interview were admitted into evidence and published at trial.

¶ 11 In the interview, defendant said that he was always afraid that his daughters could be sexually abused. He said that he "learned this a long time ago that we have to tell them what the dangers out there [are] and be a little explicit and tell them what a man is gonna [*sic*] try or could try to do." Defendant "started pointing at her *** private parts what a man could try to do," such as touch her, and told her that if they "[went] inside of [her] body," she could get pregnant. Defendant thought he "overdid it" and was too explicit, and that C.D. might have thought he was trying to do what he was telling her not to let anyone do.

¶ 12 When asked if he actually touched C.D., defendant responded "I did." It was over her clothing, and he "told her that they gonna [*sic*] try to force it and that she has to you know stop them from trying to." Defendant "would touch *** over *** her part[,] her vagina" and "told her if they try to go inside," they would hurt her. He touched her with his finger and "told her they would try to do this or even try to put their finger inside." Defendant did this "just a few times"

and stopped having such conversations with his children "like six, seven years ago." "[B]ack then [he] knew that [he] was doing it wrong." When told C.D. had said that defendant licked her vagina after she got out of the shower, defendant stated, "I don't remember[,] but I did say that men would try to get in their vagina with their mouth." Defendant was on medication for cancer and did not remember everything. Defendant said that he "did not have a recollection of ever doing it. Because that would be disgusting"

¶ 13    Defendant said that it was not his intention to harm C.D. or sexually abuse her, but rather he was trying to protect her. Defendant stated, "It was wrong for me to do it because I overdid it[.] I was too explicit but that was not never [*sic*] my intention," and "I scared my daughter." During the interview, defendant offered his opinion that C.D.'s mother had made a report only "because of what she went through," explaining that Castillo had been sexually abused as a child. He also alleged that Castillo made the report because of arguments he had been having with her:

> "The reason she decided to make this report, which is fine I I'm not if I did if I did [*sic*] something wrong and if I had to even pay for it I'll I'm [*sic*] willing to pay but the thing is that the reason she was inclined to make this report is because of all the discussion, arguments at home."

He added that he believed Castillo was also "influenced by a friend," who he said had been sexually abused and impregnated by her father. Defendant also stated that, in spite of Castillo's past and blaming him for it:

> "I know that I made a mistake (inaudible)[.] I told my wife I'm willing to if if [*sic*] I have to pay even with prison it's fine[.] I just want you to be if you're going to be able to take care of my kids.
>
> ***

It's all I care about. If I made a mistake and I deserve punishment I'll take it."

¶ 14 The State rested, and defendant moved for a directed finding on all counts. The trial court granted the motion as to counts I, III, IV, and V, and denied the motion as to count II. The defense then rested.

¶ 15 On August 19, 2021, the trial court found defendant guilty of count II. It stated that defendant admitted intentionally touching C.D.'s vagina over her clothing. It stated that pursuant to caselaw, a court may infer intent of sexual arousal or gratification from conduct alone. The trial court stated that defendant argued that he was trying to educate his daughter, but it raised the questions of why he was touching C.D. when no one else was around, why he told her not to tell her mother, why he apologized, and why it would be necessary for educational purposes to actually touch the vaginal area. The trial court found defendant's excuse for touching C.D. not credible. It found that "[b]oth in the nature of the act and the intended [*sic*] circumstances," the State had proven beyond a reasonable doubt that defendant's intent was sexual arousal or gratification.

¶ 16 On September 14, 2021, defendant filed a motion for judgement notwithstanding the verdict or a new trial. He argued, among other things, that the State failed to prove that any contact was for the purpose of sexual gratification.

¶ 17 The trial court denied the motion on December 9, 2021. It stated in its written order that defendant's argument regarding intent was not credible, as it was not necessary for defendant to touch his daughter's vagina to explain sexual penetration to her. Further, defendant said in his interview that he knew that it was wrong, and C.D. testified that defendant apologized to her and said not to tell her mother or he could go to jail. The trial court stated that an "innocent educator" would not make such statements.

¶ 18    Defendant's sentencing hearing took place on February 25, 2022. The trial court accepted the parties' agreement that defendant be sentenced to 24 months of sex offender probation.

¶ 19    Defendant timely appealed.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse, as there was insufficient evidence that he touched C.D. for sexual gratification or arousal.

¶ 22    When examining the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 23    As charged, a person commits aggravated criminal sexual abuse if he commits an act of sexual conduct with a family member under 18 years of age. 720 ILCS 5/11-1.60(b) (West 2018). As pertinent to this case, "sexual conduct" is defined as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILC 5/11-0.1 (West 2018).

¶ 24    Defendant contests only the intent element of the offense, not disputing for purposes of this appeal that he touched C.D.'s sex organ through her clothing.

¶ 25    "The intent to arouse or satisfy sexual desires can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct." *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010). "A defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act." *Id.* Factors that may be considered in determining whether a defendant acted with the intent of sexual gratification or arousal include the relationship of the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; when and where the contact occurred; and the conduct of the defendant and the victim after the contact. *People v. Ostrowski*, 394 Ill. App. 3d 82, 92 (2009).

¶ 26    Defendant argues that the manner of the touching weighs heavily against a finding of a sexual motive, as the touching occurred over clothes when both defendant and C.D. were fully dressed; C.D. described it as a "light" touch, as opposed to any rubbing or other motions, near the area that she "peed"; it lasted for about one second; there was a non-sexual purpose for the contact in that defendant was attempting to educate C.D. about the danger of committing sexual acts with boys after finding sexual texts on her phone; C.D.'s siblings were present in the house; there was no evidence that defendant said anything sexually graphic to C.D. before or after the touch; and there was no evidence of further contact between defendant and C.D., except the self-described "dream" of the shower incident that the trial court rejected by directing the finding for that count.

¶ 27    Defendant further argues that the trial court relied on the act itself as sufficient proof that defendant had the requisite sexual intent, presuming that it was for sexual gratification absent a non-sexual explanation that the court deemed credible. Defendant maintains that accepting the

court's interpretation of the State's burden would eliminate the "sexual conduct" requirement from the statue, as any contact with the enumerated parts would qualify. Defendant asserts that cases holding that intent may be inferred from the nature of the act are distinguishable because each had evidence of more than just the defendant's act to show the defendant's intent.

¶ 28    Defendant argues that his explanation that he was merely teaching C.D. was also credible, but the trial court rejected it on two bases:  that defendant told C.D. not to tell her mother about the contact or he could go to jail; and that in his interview, defendant said that he knew "he was doing it wrong." Defendant contends that although these statements may initially appear to correspond to cases that discuss consciousness of guilt, the context of defendant's statements are particularly important and, in context, do not evidence consciousness of guilt. Defendant points to his statements in his interview that Castillo had been sexually abused when she was young and that based on her experience, she may therefore have falsely believed that he "was trying to do something." Defendant asserts that this was the reason why he told C.D. not to say anything to Castillo: because Castillo would overreact and misconstrue his actions. Secondly, Defendant argues that his statement that he was "doing it wrong" meant merely that he had been too explicit with C.D. and had now learned not to teach his younger children about sex in the same manner.

¶ 29    We conclude that there was sufficient evidence that defendant touched C.D.'s sex organ for the purpose of sexual gratification or arousal. Caselaw clearly provides that a "defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act." *Burton*, 399 Ill. App. 3d at 813. In particular, "[c]ontact between defendant's finger and the victim's vagina is touching of a sexual nature and implies sufficiently that defendant was motivated by sexual gratification." *People v. Kolton*, 347 Ill. App. 3d 142, 148 (2004).

¶ 30    This is not to say that the inference of a sexual intent will be applied in a vacuum, as the circumstances of the case must be considered as well. Here, as the trial court recognized, defendant claimed that the touch was not sexual but rather he was trying to teach C.D. about what boys would want to do to her. Defendant argues that his educational intent was supported by this topic of conversation during the touch, that both he and C.D. were wearing clothing, and that C.D. described it as "light," not directly on the area that she "peed," and lasting only about one second.

¶ 31    However, the trial court also pointed out that it was not necessary for educational purposes to actually touch C.D.'s vaginal area, that defendant touched C.D. when no one else was around, that he told her not to tell her mother, and that he apologized. Defendant argues that he offered plausible explanations during his interview. However, the trial court did not find those explanations credible. "A trier of fact's credibility determinations are entitled to great weight." *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35. As defendant recognizes, the circumstances of this case could also indicate consciousness of guilt. See *People v. Delhaye*, 2021 Ill. App. (2d) 190271, ¶ 96 (the defendant's instruction to the person he was texting during a collision " 'not to tell a soul' " was evidence of consciousness of guilt); *People v. Grathler*, 368 Ill. App. 3d 802, 808 (2006) (the defendant's apology to the victim could be construed as demonstrating consciousness of guilt); *People v. Merideth*, 152 Ill. App. 3d 304, 312 (1987) (the defendant's statement to the victim not to tell anyone about the incident was evidence that the contact with the victim was intentional).

¶ 32    Further, defendant's explanations for why he told C.D. not to tell and for why he said he was "wrong" fail to explain defendant's other inculpatory statements, nor does defendant address other considerations highlighted by the trial court, namely that it was not necessary to physically touch C.D. between the legs while educating her about sex and that defendant did so when they

were alone in a room together. The trial court observed the testimony of C.D. and Castillo and viewed the videotaped statement of defendant, and was in the best position to make determinations as to the demeanor and credibility of all three, ultimately finding the witnesses credible and defendant's proffered explanations unpersuasive. The testimony of C.D. and Castillo, in addition to defendant's various inculpatory statements, provided ample evidence of defendant's guilt.

¶ 33    In a challenge to the sufficiency of the evidence, "[a]ll reasonable inferences are drawn in favor of a finding of guilt." *People v. Aljohani*, 2022 IL 127037, ¶ 67. In sum, viewing all of the evidence in the light most favorable to the prosecution, there was sufficient evidence to find defendant guilty beyond a reasonable doubt of aggravated criminal sexual abuse.

¶ 34                                      III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 36    Affirmed.