2023 IL App (2d) 230074-U
No. 2-23-0074
Order filed December 26, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-88 |
| REYNALDO TORRES, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The State proved beyond a reasonable doubt that defendant committed aggravated criminal sexual abuse by touching his stepdaughter's breast for sexual gratification or arousal.

¶ 2   After a bench trial, defendant, Reynaldo Torres, was convicted of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2020)) and sentenced to 48 months' probation. On appeal, he contends that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    The State charged defendant with three counts of aggravated criminal sexual abuse involving B.H., a family member, between February 5, 2016, and February 5, 2020. Count I alleged that defendant placed his hand on B.H.'s vagina. Count II alleged that he placed his hand on her breast. Count III alleged that he placed his hand on her thigh.

¶ 5    We summarize the trial evidence. David Smith testified as follows. He was a criminal investigator for the Kane County Child Advocacy Center (Center). On May 3, 2021, the Center began investigating defendant and his stepdaughter B.H., who was then 15 years old and had accused defendant of sexually abusing her in their house in Elgin. On May 6, 2021, Smith interviewed defendant.

¶ 6    B.H. testified as follows through a translator. She was born on February 6, 2005. Between ages 7 and 17, she resided in a house in Elgin with her mother and defendant. On three occasions, he touched her inappropriately. The first incident occurred when she was 12 years old. She woke when she heard defendant in her bedroom. She then felt him touching her over the blankets on the side of her thigh "towards the vagina." He did not touch her anywhere else. B.H. pushed him off and told him to get out of the room. He quietly left.

¶ 7    B.H. initially testified that, when the second incident occurred, she was 15, but she later testified that she was 14. B.H. explained the sleeping arrangements on the night of the second incident: "[Defendant] had been drinking the night before, heavily, so my mom and my brother, they stayed in my room. They slept in my room, and I slept on the floor while they slept on the bed." Her mother and her brother rarely spent the night in her room; when they did so, it was "[u]sually when [defendant] [was] very, very heavily drunk." B.H. testified that she woke up during the night and saw defendant standing over her. She felt him touch her. Asked where defendant touched her, B.H. initially testified, "Towards my breasts." Asked by the trial court,

"Did he touch you on the breast?" she testified, "Yes, he did." Once defendant saw that she was awake, he left the room.

¶ 8    B.H. testified that the third incident occurred when she was 15. Defendant entered her room late at night and touched her on her inner right thigh. He tried to move his hand farther, but she pushed him away and started yelling. Defendant left.

¶ 9    B.H. testified on cross-examination as follows. In the first incident, she woke up startled and felt defendant touching her over the blanket. There was no skin-to-skin contact. The touch lasted about a second. B.H. shouted and pushed defendant away, and he left. He did not touch her vagina during this incident.

¶ 10    B.H. testified that the second incident occurred when she was 14. She felt a "very quick touch." She did not have a blanket over her. She was wearing a tank top but no bra. There was no skin-to-skin contact. B.H. did not tell her mother or her brother after the incident.

¶ 11    B.H. testified that, shortly before each incident, she saw defendant drinking hard liquor. The first two times, he appeared to be intoxicated. Before the third incident, he was drinking with B.H.'s mother. That same day, after the third incident, B.H. argued with her mother about defendant's drinking. Defendant was present for the argument. At that time, B.H. had become unhappy that her mother had married defendant and hoped that she would divorce him.

¶ 12    B.H. testified that, on the day of the third incident, defendant told her that her biological father had abandoned her and that she should be grateful that defendant had taken her in. B.H. could not recall whether she told defendant that she would complain to the police about him, but she admitted that she might have. She emphasized that she had intended to go to the police for a "different reason," namely that her mother had told her that defendant had pointed a gun at her.

¶ 13    B.H. stated that defendant had been her stepfather since she was two or three. She liked him in the early years but stopped liking him after he began abusing her. Now, she "despise[s] him."

¶ 14    On redirect examination, B.H. testified that a fourth and nonsexual incident occurred. B.H. left the house after the third incident. One night after she returned , her mother and defendant argued. Later that night, defendant entered B.H.'s room and asked her to drink with him. B.H. said no and went to her aunt's house for the night.

¶ 15    The State's questioning then turned to the second incident:

"Q. Can you describe that second touch?

A. It was right here between one of the breasts [*sic*].

\*\*\*

THE COURT: I didn't get to see it. Could you show it again? So on top of your breast, your left breast?

THE WITNESS: Yes.

THE COURT: So the record should reflect that she placed her hand on the top portion of her left breast.

BY MS. WILKINSON [(ASSISTANT STATE'S ATTORNEY)]:

Q. And, again, was that a quick touch, a rub, or something else?

A. A rub."

¶ 16    On recross-examination, B.H. agreed with defense counsel that the second incident lasted only a "split second." After the third incident, B.H. did not tell her mother what had happened, but she did tell her aunt. It was immediately after the third incident that defendant made his disparaging remarks to B.H. about her biological father.

¶ 17    Sandra Navarrete testified that, in May 2021, she assisted Smith as a translator at defendant's interview. Defendant came to the Center voluntarily and was cooperative throughout. He admitted that he had a drinking problem and that he needed help because he would get into arguments with his wife. Defendant also admitted that, on two occasions, he entered B.H.'s room after he had been drinking. B.H. hated it when he hugged and kissed her, but he did it anyway. When Navarrete confronted defendant with B.H.'s allegations and asked whether he "thought [B.H.] was a liar," he said no.

¶ 18    The State rested. Defendant moved for directed findings on all counts. The trial court granted the motion on count I, finding a lack of evidence that defendant touched B.H.'s vagina, as alleged. The court denied the motion on the remaining counts.

¶ 19    Defendant testified as follows. One day, his wife told him that he "could not return home" and that "the children were in danger." He came home, retrieved some possessions, and rented a hotel room. About two weeks later, he was asked to come to the Center for an interview. He did so. He told Smith and Navarrete that he had a drinking habit that was causing him problems, namely that he would get into arguments with his wife and speak harshly to B.H.

¶ 20    Defendant testified that, in 2019 or 2020, B.H. took a trip to Mexico against his wishes; when she returned, she was hostile and cold toward him. She refused to do chores and spent a great deal of time with her grandparents. Defendant frequently scolded and argued with her. Their last argument occurred on "[t]he day [B.H.] fought with her mother." On that date, defendant told B.H. that her biological father was irresponsible and would not take care of her.

¶ 21    Defendant testified that he never touched B.H. on her breasts or thigh for the purpose of sexual gratification or arousal.

¶ 22    On cross-examination, defendant admitted that, on at least two occasions, he went to B.H.'s room and stood in the doorway to talk to her. Defendant could not recall the exact date he spoke to Smith and Navarrete. Asked whether, before he spoke to the investigators, he had a FaceTime conversation in which B.H. told him, " 'You know what you did to me,' " defendant responded, "Completely false. A lie." Defendant testified that, on one occasion, he entered B.H.'s room and took a blanket off her because he was looking for his wife. He denied that he touched B.H. by accident while removing the blanket, but he admitted telling investigators that he might have touched B.H. by accident while removing the blanket.

¶ 23    On redirect examination, defendant denied that he told investigators that he needed to stop his drinking because he was touching B.H.; rather, he told them that he needed to stop because of his health problems. Defendant admitted that less than two weeks might have passed between when he heard that his children were in danger and his interview with investigators.

¶ 24    Defendant rested. In rebuttal, Navarrete testified that defendant told her and Smith that, "when [defendant] goes to sleep, he's passed out drunk."

¶ 25    B.H., also called in rebuttal, testified that, after the third incident, she called a friend and left the house. The next morning, her mother and defendant called her on FaceTime and asked why she had left. She did not tell them. On cross-examination, B.H. stated that she told her mother on the FaceTime call that she left the house because she " 'couldn't deal with it because of what [defendant] said.' " Defendant asked B.H. what he had said, and she told him, " 'You know what you said.' " She never told him, " 'You know what you did.' "

¶ 26    After hearing arguments, the trial court found defendant not guilty on count III but guilty on count II. The court stated initially that it found B.H. to be "a credible witness," partly because she admitted disliking defendant. The court credited her testimony that she came to dislike

defendant because of his inappropriate touching, his drinking, and his treatment of her mother. These were all sound reasons, the court found.

¶ 27    The trial court specifically found that defendant "did touch" B.H. on the occasions relating to counts I and II (and even on the occasion relating to count I, on which the court entered a directed finding for defendant). However, the court noted that the State had to prove, under each count, that defendant touched B.H. for his sexual gratification or arousal. (The court found the other elements clearly proved beyond a reasonable doubt.) Addressing count III first, the court noted that defendant touched B.H. over both her clothes and a blanket of undisclosed thickness. The court recognized that "[a] defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act." However, the court was unable to find that defendant "actually kn[ew] where [on her body] he was touching [B.H.]." Thus, the court could not infer a sexual purpose from the touching.

¶ 28    Addressing count II, the court found that the State had proved that defendant touched B.H.'s breast for his sexual gratification or arousal. The court noted that B.H. testified that, on this occasion, she was sleeping on the floor without a blanket and woke up to discover that defendant was "rubbing her left breast through her clothes." When she woke up, he left. The court cited case law holding that touching a female's breast generally involves a sexual purpose, "[t]he only possible exception [being] a medical examination." Moreover, "if the defendant's intent was merely to wake up [B.H.], then why did he leave once she woke up?" Thus, the State proved count II beyond a reasonable doubt.

¶ 29    Defendant moved for a new trial. The trial court denied the motion and sentenced him to 48 months' probation. He timely appealed.

¶ 30                                    II. ANALYSIS

¶ 31    On appeal, defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt on count II. Defendant's arguments essentially focus on B.H.'s credibility. For the following reasons, we affirm.

¶ 32    In addressing a challenge to the sufficiency of the evidence, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any reasonable fact finder could have found the essential elements of the charged offense beyond a reasonable doubt. *People v. Hopkins*, 201 Ill. 2d 26, 40 (2002). The credibility of the witnesses and the weight to be given to the evidence are within the prerogative of the fact-finder. *People v. Holmes*, 141 Ill. 2d 204, 242 (1990). Moreover, we must allow all reasonable inferences from the evidence in favor of the prosecution. *People v. Baskerville*, 2012 IL 111056, ¶ 31.

¶ 33    A person commits aggravated criminal sexual abuse as charged here when he commits an act of "sexual conduct" with a victim who is a family member under 18 years of age. 720 ILCS 5/11-1.60(b) (West 2020). " 'Sexual conduct' " means "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 11-0.1.

¶ 34    Defendant first notes that, on direct examination, B.H. stated initially that defendant touched her "[t]owards [her] breasts." When asked specifically if defendant touched her "on the breast," she said yes. On redirect examination, B.H. said that the touch was "between one of the breasts [*sic*]," an oxymoron that required clarification. Asked to demonstrate, she placed her hand "on the top portion of her left breast," as the trial court described it. She then described the touch as a "rub." In explaining the finding of guilt, the court stated that defendant had been "rubbing" B.H.'s breast.

¶ 35    Defendant contends that the foregoing testimony created a reasonable doubt of his guilt. He emphasizes that the trial court described defendant's conduct as "rubbing," but B.H. did not use the term "rub" until redirect examination.

¶ 36    We hold that the evidence on count II was sufficient. Viewing the evidence in the light most favorable to the prosecution and deferring as we must to the trial court's prerogative to decide witness credibility, we conclude that its description of defendant's action as "rubbing" was supported by the evidence. In any case, the State was not required to prove that defendant "rubbed" B.H.'s breast, but only that he "touched" it (see *id.*). B.H. testified more than once that defendant touched her breast, and she also demonstrated his action. Moreover, "touching" and "rubbing" are not mutually exclusive. Any inconsistency in B.H.'s account of how defendant made contact with her breast did not require the court to find a reasonable doubt that he made contact at all.

¶ 37    Defendant also argues that the State failed to prove that he touched B.H.'s breast for his sexual gratification or arousal. Defendant notes B.H.'s testimony that the touching was very brief. He then cites several opinions in which courts reversed convictions of sexual offenses. As defendant does not explain why these opinions are pertinent here, and each case turns on its unique facts, we focus on the particular evidence *here* of defendant's purpose. We find that evidence sufficient to sustain the conviction.

¶ 38    A defendant's intent to arouse or satisfy sexual desires can be inferred from circumstantial evidence. *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010). Indeed, such intent can be inferred solely from the nature of the act. *Id.* As the trial court noted in explaining its finding of guilt, case law recognizes that touching a female breast can be sufficient by itself to prove a sexual purpose, at least when, as here, there is no evidence of some other purpose. See *id.*; *People v. Goebel*, 161

Ill. App. 3d 113, 125 (1987). The trial court was well within its prerogative in finding that defendant's touching B.H.'s breast as she slept was done for a sexual purpose.

¶ 39    Next, defendant contends that B.H.'s testimony was inherently unbelievable because she did not tell her mother about defendant's conduct and admittedly despises defendant. Defendant again asks us to reweigh the evidence, which we may not do. Also, B.H. testified that she told her aunt about the incident. The trial court reasonably found that B.H. despises defendant because he had abused her, not that her hostility motivated her to accuse him of abusing her. The court credited B.H. as a witness, and we have no basis to disturb its credibility finding.

¶ 40    Finally, defendant argues that his acquittal on count III cast doubt on his conviction on count II. He intimates that the touching underlying both counts was "a split-second touching over B.H.'s clothes." Defendant's comparison is faulty. The counts were based on different acts under different circumstances. Notably, the basis of the acquittal on count III was not whether he touched her or the duration of the touching but whether defendant knew what part of B.H.'s body he was touching while she was covered by both a blanket and clothes (in contrast, relative to count II, B.H. testified that she was not covered by a blanket when defendant touched her through her tank top).

¶ 41                                   III. CONCLUSION

¶ 42    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 43    Affirmed.