2026 IL App (1st) 242488-U

No. 1-24-2488

Order filed June 12, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| Plaintiff-Appellee, | ) | Criminal Division. |
| | ) | |
| v. | ) | No. 22 CR 08284 01 |
| | ) | |
| ODIS SIMMONS, | ) | Honorable |
| | ) | Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    Held:  Defendant's conviction is affirmed where there was sufficient evidence to find defendant touched the victim for the purpose of sexual gratification or arousal.

¶ 2    Defendant appeals his conviction, following a bench trial, of four counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b), (d) (West 2022)). The circuit court sentenced defendant to two years' probation, and the conviction requires him to register as a sex offender.

¶ 3    The issue presented is whether there was sufficient evidence that defendant touched the complaining witness, B.C., for the purpose of sexual gratification or arousal where the evidence

turned on the credibility of B.C.'s testimony and defendant's ambiguous statements to law enforcement in an electronically recorded interview. For the following reasons, we affirm.

¶ 4                                         I. BACKGROUND

¶ 5      The evidence at trial established the following. B.C. lived in a home in Chicago with a woman she is not biologically related to but considered to be her grandmother. They lived with her grandmother's boyfriend, defendant Odis Simmons. They also lived with B.C.'s four cousins and one uncle. B.C. was 15 years old at the time of the alleged offense, and defendant was 55.

¶ 6      B.C. testified that on February 12, 2022, defendant entered her bedroom before B.C. went to bed. This was not unusual as they normally spoke before bed. Defendant gave her a hug and kiss on the neck, and defendant brushed against B.C.'s breast "a little." At the time, B.C. believed the contact with her breast was inadvertent.

¶ 7      After taking a shower the next day, B.C. exited the bathroom wearing shorts and a tank top with no bra. Defendant approached in the hallway, handed her a honey bun, and gave her a hug and kiss on the neck. B.C. testified that defendant also pinched her nipple four times. She said defendant laughed during the pinching, "but it wasn't like a cool type of laugh." No one else saw the incident. B.C. felt "very uncomfortable" and went to her bedroom. She testified that defendant entered her bedroom, gave her a hug and kiss on the neck, and defendant made a "grunting noise." B.C. felt "conflicted" and "couldn't piece together what happened."

¶ 8      The following day, on February 14, B.C. described the incident to her school social worker, Aubrey Dvorak. Dvorak told B.C. to write her narrative down on paper, and B.C. read portions of it during her cross-examination.

¶ 9    After B.C.'s testimony was complete, the State called Dvorak to the stand. Dvorak testified that she met with B.C. at least once per week, and at their meeting on February 14, B.C. was "upset." During the meeting, B.C. demonstrated how defendant touched her by touching her own breast and butt.

¶ 10    The State also called Detective Dameka Burleigh to the stand. Detective Burleigh testified that after defendant's arrest, she interviewed defendant on July 5 and July 6, 2022. The circuit court admitted a video recording of the interviews into evidence, and the State played it during Detective Burleigh's direct examination.

¶ 11    The video shows Detective Burleigh and a colleague questioning defendant in a jail cell after defendant waived his *Miranda* rights. The detectives asked what defendant was thinking when he touched B.C.'s breast, and defendant shook his head and said he did not know. He went on to state "it was wrong" and "it just happened."

¶ 12    The detectives probed defendant's motivations and asked about his sexual feelings. Defendant gave ambiguous and contradictory responses. For example, Detective Burleigh asked, "[a]t some point, did you get a little erection behind it? Did you have any feelings behind you touching her breast?" Defendant responded, "[a]—a little bit. A little bit of feelings" and "it's been eating me up." Later, however, when Detective Burleigh asked if he got an erection after he touched her, defendant said "no, none of that." Detective Burleigh immediately responded and asked, "but you did have some sexual feelings behind it?" Defendant again said, "no, none of that." Detective Burleigh asked what defendant meant when he previously said he had feelings while touching B.C. Defendant replied he was referring to feeling bad and that it was wrong.

¶ 13    The State rested after Detective Burleigh's testimony, and defendant moved for a directed finding. The circuit court denied the motion, and the defense rested.

¶ 14    The circuit court found defendant guilty of all four counts of aggravated criminal sexual abuse. The circuit court found B.C.'s testimony was "extremely credible" in light of the fact that B.C. "immediately" complained of the incident to the school social worker. Further, the court reasoned the pinching must have been for the purpose of sexual gratification or arousal because defendant pinched B.C.'s nipple four times and defendant touched B.C.'s breast the night before. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Apr. 15, 2024).

¶ 15                                    II. ANALYSIS

¶ 16    Defendant argues the State failed to prove defendant pinched B.C.'s nipple for the purpose of sexual gratification or arousal where defendant did not touch B.C. underneath her clothing; defendant did not make sexual comments when he touched her; B.C.'s credibility as a witness was impeached; and defendant's statements to the detectives during his interview were not an admission of sexual gratification or arousal. The State argues the evidence was sufficient because touching a woman's nipple is inherently sexual; during his interview with detectives, defendant admitted he "felt something" and that it was inappropriate; defendant brushed B.C.'s breast the night before; and defendant kissed B.C. goodnight the night of the incident and made a grunting noise.

¶ 17    When reviewing a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Jones*, 2023 IL 127810, ¶ 28.

"[A] reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Wright*, 2017 IL 119561, ¶ 70. We will overturn a conviction only if "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jones*, 2023 IL 127810, ¶ 28.

¶ 18    A person commits the offense of aggravated criminal sexual abuse if the person engages in "an act of sexual conduct with a victim who is under 18 years of age and the person is a family member," or "an act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age and the person is at least 5 years older than the victim." 720 ILCS 5/11-1.60(b), (d) (West 2022). Sexual conduct is "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused *** for the *purpose of sexual gratification or arousal* of the victim or the accused." (Emphasis added.) *Id.* § 11-0.1. "The intent to arouse or satisfy sexual desires can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct." *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010).

¶ 19    Here, there was ample circumstantial evidence for a rational trier of fact to find defendant pinched B.C.'s nipple for the purpose of sexual gratification or arousal. B.C. testified that defendant pinched her nipple, not once, but *four* times. She testified that after the pinching, defendant kissed her on the neck in her bedroom and made a grunting noise. B.C. testified that the night before, defendant brushed his hand over B.C.'s breast as he kissed her on her neck. B.C. immediately reported the incident to her school counselor. Further, during his interview with law

enforcement, defendant stated he had feelings while touching B.C., and he said it was wrong and felt bad. Against this backdrop, a rational trier of fact could find defendant pinched B.C. for the purpose of sexual gratification or arousal. See *People v. Jackson*, 232 Ill. 2d 246, 281 (2009) ("[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.").

¶ 20    Defendant argues there was a lack of evidence of sexual gratification or arousal when compared to factors that courts have considered in other sexual abuse cases. For example, defendant argues his contact with B.C. was not accompanied by sexual statements. See *In re M.H.*, 2019 IL App (3d) 180625, ¶ 17 ("Sexually explicit comments by the accused may also support a finding that the accused acted for purposes of sexual gratification or arousal."); *People v. Wells*, 2019 IL App (1st) 163247, ¶ 29 (affirming a conviction for sexual abuse where defendant touched the victim's nipple and told the victim to come to practice early to "show me what you've got, just don't tell my wife"). Defendant also notes that he knew B.C. for many years, he was dating her grandmother, the alleged sexual contact was brief, and the contact occurred in the hallway of a crowded home. See *People v. Ostrowski*, 394 Ill. App. 3d 82, 92 (2009) (explaining considerations for sexual gratification or arousal include "the relationship between the defendant and the victim," "length of the contact," and "when and where the contact took place"). Defendant maintains that he did not use force or touch B.C. underneath her clothing. See *Burton*, 399 Ill. App. 3d at 813 (affirming a conviction where defendant reached under the victim's shirt).

¶ 21    However, there is no formal list of factors to determine whether contact was intended for sexual gratification or arousal. *Ostrowski*, 394 Ill. App. 3d at 92-93. "[T]he term sexual

gratification is not restrictively defined, its meaning is determined by the trier of fact's assessment of the evidence presented for its consideration." (Internal quotation marks omitted.) *People v. Marcum*, 2015 IL App (5th) 130092-U, ¶ 26 (citing *People v. Alexander*, 369 Ill. App. 3d 955, 957 (2007)).

¶ 22    Next, defendant argues portions of B.C.'s testimony were not credible. At trial, B.C. testified that after defendant pinched her nipple in the hallway, defendant kissed B.C. goodnight in her bedroom and made a grunting noise. Defense counsel impeached this testimony with B.C.'s journal where she wrote that defendant went into her grandmother's room after the pinching, not her own room. Defendant also maintains that B.C. gave contradictory testimony on the time of day of the incident. However, "impeachment goes to credibility and is for the [trier of fact], not this court, to weigh." *People v. Smith*, 253 Ill. App. 3d 443, 455 (1993).

¶ 23    Defendant also contends that he did not admit to being sexually aroused during his interview with the detectives. Specifically, defendant notes that when he responded "[a]—a little bit. A little bit of feelings," he was responding to a compound question. Detective Burleigh had asked "[a]t some point, did you get a little erection behind it? Did you have any feelings behind you touching her breast?" Defendant argues it is unclear whether he responded affirmatively to having an erection or to having feelings, and Detective Burleigh testified on cross-examination that she was not sure which question defendant responded to. Later in the interview, Detective Burleigh directly asked what defendant was referring to when he said he felt something while touching B.C.'s breast, and defendant said he was referencing his feelings of remorse, not sexual attraction.

¶ 24    The circuit court did not cite defendant's statements from the interview in finding defendant guilty. Indeed, there was sufficient evidence for a rational trier of fact to convict defendant without those statements. It is enough that the circuit court found B.C.'s testimony "extremely credible," and there was no substantive evidence undermining her version of events. See *People v. Morgan*, 112 Ill. 2d 111, 136 (1986) (explaining that, in reviewing a sex crime conviction, "[i]f the testimony of the complaining witness is clear and convincing or is independently corroborated [citations], we will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused" (internal quotation marks omitted)).

¶ 25                                III. CONCLUSION

¶ 26    For these reasons, the judgment is affirmed.

¶ 27    Affirmed.