2015 IL App (2d) 131234
No. 2-13-1234
Opinion filed October 20, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-836 |
| CHRISTOPHER GARCIA, | ) ) ) | Honorable Susan Clancy Boles, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Kane County, defendant, Christopher Garcia, was found guilty of threatening a public official (720 ILCS 5/12-9 (West 2012)) and was sentenced to a 54-month prison term. The verdict was based on evidence that defendant made death threats against Judge Alice Tracy after she had found him to be in contempt of court. Defendant argues that the State failed to prove beyond a reasonable doubt that he delivered or conveyed a threat to Judge Tracy and that his conviction must therefore be reversed. We affirm.

¶ 2    At trial, the State presented evidence that, on May 7, 2013, defendant appeared before Judge Tracy during a bond call at the Aurora branch court. Defendant uttered profanities that were directed to the judge. According to a witness, one of the profanities was "gender specific."

As a result, Judge Tracy held defendant in contempt of court and he was removed from the courtroom. Linda Conard, a court detention technician employed by the Aurora police department, testified that she escorted defendant to the Aurora police department's booking area. Conard testified that when defendant returned to the booking area he said that "[w]hen he got out he was going to break the judge's f***ing neck, he had an AK-47, he had other weapons, he was going to f*** up Aurora police officers." Another court detention technician, Wilson Roman, testified that he was present during the incident and heard defendant say that he "was going to f*** our world up, he was going to break the judge's neck, he had more guns than the Aurora P.D., and he was going to take an officer down with him."

¶ 3 Manuel Olalde, a transport officer with the Kane County sheriff's department, testified that on May 7, 2013, he was instructed to transport defendant from the booking area of the Aurora police department to the Kane County jail. Olalde testified that, while at the booking area, defendant "was yelling out, f*** that bitch, I'm at war with the Aurora PD, I have AK-47s, I'm going to blow this place up, I'll kill that bitch." Olalde informed defendant that he had been found in contempt of court. Olalde further testified that, after he informed defendant of the sentence Judge Tracy imposed for contempt, "[defendant] started yelling out again, repeating himself. I got AK-47s, threatening to blow up the Aurora Police Department, that he was at war with Aurora, they don't know what I got, I got weapons, I got a woman out there, she's a warrior just like me." In addition to threatening the Aurora police, defendant threatened to kill the judge. On cross-examination, Olalde testified that he did not recall hearing defendant ask that the threats be conveyed to the judge. On redirect examination, the prosecutor asked, "As a law enforcement officer, if somebody specifically threatens a judge, can you conceive of not telling

the judge about the threat?" Olalde answered, "No." On recross-examination, however, Olalde testified that he did not tell Judge Tracy that defendant had threatened her.

¶ 4    Tanika Cross, a Kane County correctional officer, testified that she was present at the Aurora branch court on the date in question. While she and defendant were in the booking area, defendant asked about the length of his sentence for contempt of court. Cross told him that he was sentenced to 30 days in jail. She heard defendant state that he was going to blow up Aurora and that he had AK-47s. Defendant said something about the judge, but Cross could not recall specifically what defendant had said.

¶ 5    Aurora police officer Ryzard Drozdowski testified that after speaking with Conard and Roman he prepared an incident report. He then spoke with Judge Tracy and informed her of the threats that defendant had made against her.

¶ 6    Defendant testified that he made no threats against Judge Tracy. He indicated that his animosity was directed at the police.

¶ 7    At the time of the incident in question, section 12-9 of the Criminal Code of 2012 (Code) (720 ILCS 5/12-9 (West 2012)) provided, in pertinent part, as follows:

> "(a) A person commits threatening a public official when:
>
> > (1) that person knowingly delivers or conveys, directly or indirectly, to a public official by any means a communication:
> >
> > > (i) containing a threat that would place the public official or a member of his or her immediate family in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement, or restraint;
> > >
> > > ***
> >
> > *** and

(2) the threat was conveyed because of the performance or nonperformance of some public duty, because of hostility of the person making the threat toward the status or position of the public official, or because of any other factor related to the official's public existence.

\* \* \*

(b) For purposes of this Section:

(1) 'Public official' means a person who is elected to office in accordance with a statute or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions or in the case of an elective office any person who has filed the required documents for nomination or election to such office. 'Public official' includes a duly appointed assistant State's Attorney, assistant Attorney General, or Appellate Prosecutor; a sworn law enforcement or peace officer; a social worker, caseworker, or investigator employed by the Department of Healthcare and Family Services, the Department of Human Services, or the Department of Children and Family Services." 720 ILCS 5/12-9(a)(1)(i), (a)(2), (b)(1) (West 2012).

¶ 8    A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When we review a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979)).  The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 9     There is no dispute that Judge Tracy was a public official, and defendant does not deny that there was sufficient evidence for the jury to conclude that defendant made a threat against her within the meaning of section 12-9 of the Code.  Defendant argues, however, that although the threat was made *about* Judge Tracy, it was not made *to* Judge Tracy, and thus it is outside the scope of the statute.  Defendant emphasizes that the threatening words were not uttered in Judge Tracy's presence.  They were, however, uttered in the presence of personnel of the Aurora police department and the Kane County sheriff's department, and Judge Tracy was made aware of defendant's threatening words.  By its terms, section 12-9 makes it a crime to knowingly deliver or convey a threatening communication "directly *or indirectly*, to a public official by any means."  (Emphasis added.)   720 ILCS 5/12-9(a)(1) (West 2012).   By making threatening statements in the presence of personnel of law-enforcement agencies, who reported the threats to a police officer, who informed the public official about whom the threats were made, defendant indirectly conveyed the threats to the public official.

¶ 10    That defendant's threats were conveyed to Judge Tracy is not enough to sustain defendant's conviction; the State was also obligated to prove that defendant acted knowingly, *i.e.*, with knowledge that the threats would be conveyed to Judge Tracy.  Defendant stresses the absence of evidence that he ever asked anyone to convey the threats to the judge.  But there is no basis in law or logic for holding that such evidence was necessary in order to prove that

defendant acted knowingly. Section 4-5 of the Code (720 ILCS 5/4-5 (West 2012)) provides, in pertinent part:

> "A person knows, or acts knowingly or with knowledge of:
>
> \*\*\*
>
> (b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2012).

That a person does not specifically request that a threat be passed along to the target does not preclude the possibility of circumstances existing that would nearly guarantee that the threat would be conveyed to the target. Here, the jury could reasonably infer that it was a practical certainty that threats against a judge, made in the presence of personnel of law-enforcement agencies, would be brought to the judge's attention. Furthermore, the jury could reasonably conclude that defendant was not so uncommonly naïve as to believe otherwise. Defendant notes that there was a discrepancy in Olalde's testimony in that he testified that he could not conceive of failing to apprise a judge of a threat to his or her safety but that he did not apprise Judge Tracy of the threats that defendant had made against her life. That discrepancy is certainly not dispositive of the issue of *defendant's* mental state.

¶ 11    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 12    Affirmed.