2024 IL App (2d) 230448-U
No. 2-23-0448
Order filed October 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-443 |
| LAWRENCE SLACK, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justice Kennedy concurred in the judgment.
Justice Mullen concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*: The State presented evidence beyond a reasonable doubt that the defendant committed criminal sexual assault and aggravated criminal sexual abuse.

¶ 2    Following a bench trial, the defendant, Lawrence Slack, was convicted of one count of criminal sexual assault for the digital penetration of the victim's vagina (720 ILCS 5/12-16(b) (West 2010)),[1] one count of aggravated criminal sexual abuse for touching the victim's vagina

---

[1] The statutes in effect at the time of the offenses and under which the defendant was

(*id.* § 12-12(e)), and one count of aggravated criminal sexual abuse for touching the victim's breasts (*id.*). The defendant was sentenced to 4 years imprisonment on the criminal sexual assault conviction and 2 concurrent 48-month terms of probation for the aggravated criminal sexual abuse convictions, to be served consecutive to his prison sentence. The defendant appeals his convictions. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      The defendant was indicted on three counts of criminal sexual assault and four counts of aggravated criminal sexual abuse of his stepdaughter T.G. Counts 1 through 3 alleged that the defendant digitally penetrated T.G.'s vagina; count 4 alleged that the defendant touched T.G.'s vagina separate from any act of penetration; and counts 5 through 7 alleged that the defendant touched T.G.'s breasts. These offenses were alleged to have occurred between March 2008 and March 2011 when T.G. was between 15 and 17 years old. The defendant waived his right to a jury trial, and the case proceeded to a bench trial.

¶ 5      At trial, T.G. testified first for the State. T.G. was 30 years old at the time of trial. She lived with the defendant at a home in Elgin from the time she was 4 years old until she left for college at age 18 in 2011. During this time, they also lived with T.G.'s mother—the defendant's now ex-wife—Christy Curtiss, T.G.'s older sister Ashleigh MacArthur, and Ashleigh's daughter.

---

charged were renumbered in July 2011. See Pub. Act 96-1551, Art. 2, § 5. The parties and trial court cite to both versions and there is no significant substantive difference between the two versions. See 720 ILCS 5/11-1.20(a)(3) (West 2022) (criminal sexual assault); 720 ILCS 5/11-1.60(b) (West 2022) (aggravated criminal sexual abuse).

From about 2008 until 2011, the defendant was unemployed and was T.G.'s primary caregiver. The defendant drove T.G. to school, social events, cheerleading practice, and tanning sessions.

¶ 6 T.G recalled that the defendant offered to put lotion on her skin when he noticed it was dry after tanning. The first few times he did this, the defendant's touching consisted only of applying lotion and massaging her back. T.G. said that she was always lying on her stomach and remained clothed in a bathing suit or sports bra and cheer shorts during the massages. The massages typically occurred in her bedroom at home. T.G. testified that over time the defendant's touching progressed to moving his hands underneath her clothes and cupping her breasts. Additionally, as the defendant was applying lotion to her legs, he would separate her legs, touch her vagina, and insert his fingers into her vagina. T.G. estimated that this occurred 10 times when she was between 15 and 17 years old. T.G. said the defendant told her not to tell her mother because her mother would be jealous that T.G. was receiving so many massages.

¶ 7 T.G. also testified about a specific event when she was 16 years old that occurred when her mother was out of town. T.G. was asleep in her room when the defendant entered wearing only his underwear. The defendant pulled the covers off T.G. and told her that he was going to give her a "rubdown." T.G. said Ashleigh, who was 26 years old at the time, entered the room, saw the defendant sitting on T.G.'s bed, and began yelling at the defendant. T.G. then left the room and hid behind a couch, while Ashleigh left the house with a friend.

¶ 8 T.G. first disclosed the abuse in 2021, when speaking with Kane County Children's Advocacy Center Investigator David Smith. While she previously told Ashleigh that the defendant gave her massages and it made her uncomfortable, she did not tell Ashleigh about the inappropriate nature of the massages. T.G. said she did not tell anyone earlier because she maintained a close

relationship with the defendant's older daughters and felt that knowledge of this would destroy the family.

¶ 9 Ashleigh testified regarding the incident that occurred when their mother was out of town. She recalled that the defendant was intoxicated that night and was very confrontational with her. She went to T.G.'s room to tell T.G. that she was leaving the house. When Ashleigh opened T.G.'s door, she saw the defendant sitting on T.G.'s bed in his underwear holding a beer. T.G. remained under the covers and Ashleigh yelled at the defendant and left the house.

¶ 10 Detective Dena Bango of the Buckeye, Arizona police department testified that she was contacted by the Kane County State's Attorney's Office to interview the defendant, who was living in Buckeye. Detective Bango said the defendant voluntarily agreed to speak with her. The interview was recorded, clips of which were admitted into evidence and played at trial. During the interview, the defendant admitted to giving T.G. massages but denied intentionally touching her vagina or breasts. He stated that it was possible that he may have accidentally touched the side of T.G.'s breasts while he was massaging her back. He also suggested that T.G. may have mistaken lotion touching her vagina as him touching it. Additionally, the defendant stated that T.G. requested massages multiple times, including at family gatherings. He estimated that he gave T.G. massages around 100 times.

¶ 11 After the trial court denied the defendant's motion for a directed finding, the defendant testified in his own defense that he was 65 years old at the time of the trial. The defendant lived with T.G., her mother, and Ashleigh from 1998 until T.G. left for college in 2011. He was laid off from work in 2010 and had part-time jobs while T.G. was a teenager. The defendant also admitted to giving T.G. massages while she was in high school. He believed that he gave T.G. massages approximately 40 to 50 times. The defendant used lotion when he first began giving T.G. massages

because his hands were calloused from work. After getting laid off, he stopped using lotion because his hands got smoother. He said T.G. was always clothed and he denied ever touching T.G.'s breasts or vagina during the massages. The defendant stated that T.G. requested the massages most of the time, but there were times that she did not request them. He said that the comment about T.G. not telling her mother was a joke. The defendant also did not recall the night described by T.G. and Ashleigh. He testified that he always wore gym shorts around the house and never wore just underwear.

¶ 12 Kathleen Close, the defendant's sister, testified that she had known T.G. since T.G. was four years old. She never observed anything that seemed suspicious about the defendant's relationship with T.G. She further testified that T.G. often requested massages, including in public settings.

¶ 13 On August 18, 2023, the trial court issued a written decision finding the defendant guilty of criminal sexual assault as charged in count 1 and aggravated criminal sexual assault as charged in counts 4 and 5. The trial court found that T.G.'s testimony was "clear and generally consistent," and that she was a credible witness. The trial court also found that "the [d]efendant never clearly and definitely admitted the alleged acts, but conceded they might have occurred without his notice or intent. The [d]efendant's admission that he would give his teenage step-daughter a back rub when she did not request it, belies his denial." The trial court found the defendant not guilty of criminal sexual assault as charged in counts 2 and 3 and not guilty of aggravated criminal sexual abuse as charged in counts 6 and 7. The trial court found that T.G.'s general testimony that the conduct occurred over 10 times was insufficient to establish beyond a reasonable doubt that it occurred on more than one occasion.

¶ 14    Following the denial of the defendant's motion for a new trial, the trial court sentenced the defendant to four years in prison on the aggravated criminal sexual assault charge and two concurrent 48-month terms of probation on the aggravated criminal sexual abuse charges, to be served consecutively to his prison term.  The defendant filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16    The defendant's first contention on appeal is that he did not receive a fair trial because the trial court misapprehended his testimony.  Specifically, the defendant complains of the trial court's finding that his "admission that he would give his teenage step-daughter a back rub when she did not request it, belies his denial."  The defendant argues that the trial court's wording implies that he massaged T.G. without her consent, but there was never any testimony that he did so without T.G.'s consent.

¶ 17    A trial court's failure to accurately recall testimony denies a defendant his or her right to a fair trial.  *People v. Mitchell*, 152 Ill.2d 274, 322-23 (1992).  We review the denial of the due process right to a fair trial *de novo*.  *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75.  However, we will find a due process violation only where the record affirmatively shows that the trial court did not accurately recall the testimony.  *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91.  Absent a showing of an affirmative mistake in the record, we will not substitute our judgment for that of the trial court regarding the credibility of witnesses, weight given to the evidence, or reasonable inferences drawn from the evidence.  *People v. Sauls*, 2022 IL 127732, ¶ 52.

¶ 18    We cannot say that the trial court misapprehended the defendant's testimony.  The defendant explicitly testified that there were times that he massaged T.G. when she did not request one.  On direct examination he testified:

    "Q.  The purpose of these massages, did she request them sometimes?

> A. Yes.
>
> Q. Okay.
>
> A. Most of the time."

He answered similarly on cross-examination:

> "Q. You had testified here that most of the time that you would give back massages or rubs to [T.G.], she had requested them?
>
> A. Correct.
>
> Q. So there would be times where back massages would happen not by her request?
>
> A. Correct.
>
> * * *
>
> Q. So you would initiate [T.G] with a back—or back rubs with [T.G.]?
>
> A. Yeah, a few times."

The defendant clarified that he would ask T.G. if she wanted a massage on the occasions that she did not request one.

¶ 19    The foregoing testimony shows that the defendant had occasionally initiated the massages. The trial court's statement that the defendant gave the victim massages when she had not requested it is, thus, not without support in the record. Moreover, reviewing the trial court's written decision as a whole makes clear that this isolated statement was resolving a conflict between the testimony of T.G. and the defendant and was not addressing any issue of consent. T.G. testified that the defendant's massages included inappropriate sexual touching; the defendant denied any sexual conduct. Finding T.G. to be a more credible witness, the trial court resolved this conflict in the State's favor. In the trial court's view, the defendant's admissions that he gave T.G. massages, coupled with her testimony about the massages' sexual nature, negated the defendant's denials

about the sexual conduct. Thus, when read in the full context of the trial court's decision, this statement is not a misapprehension of the defendant's testimony, but an inference drawn from the conflicting testimony. See *People v. Rizzo*, 362 Ill. App. 3d 444, 449 (2005) ("Where the evidence presented is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution").

¶ 20    In arguing to the contrary, the defendant relies on *Mitchell*, 152 Ill. 2d 274, and *People v. Miller*, 2013 IL App (1st) 110879. These cases, however, are easily distinguishable. The trial court in *Mitchell* entirely failed to recall the defendant's testimony regarding whether he felt free to leave a police station, which was at the heart of the defendant's motion to suppress his confession. *Mitchell*, 152 Ill. 2d at 322. Our supreme court determined that this failure by the trial court affected each of the factors considered in ruling on the motion to suppress. *Id.* Indeed, the State admitted that the trial court's memory "might not have been entirely accurate." *Id.* at 323. Because of this, our supreme court concluded that "the trial court clearly did not base its decision on all of the circumstances, as it failed to recall the testimony most crucial to [the] defendant's argument" and the defendant was denied his right to a fair trial. *Id.*

¶ 21    In *Miller* the owner of a stolen vehicle testified that her vehicle's steering column had some damage but never testified that it was "peeled," an indicator that the car was stolen. *Miller*, 2013 IL App (1st) 110879, ¶ 11. During closing arguments, the State incorrectly said that the owner testified that the steering column was peeled. *Id.*, ¶ 43. The trial court relied on this in its ruling, stating the owner "did, in fact indicate that the steering wheel column was peeled." *Id.* On appeal, the defendant argued that the trial court misapprehended the owner's testimony in its ruling, which the State conceded. *Id.*, ¶ 42. The appellate court thus held that the trial court erred by relying on the State's incorrect rendition of the owner's testimony. *Id.*, ¶ 44.

¶ 22    Here, however, there is no affirmative indication in the record that the trial court misapprehended or ignored any portion of the defendant's testimony. Indeed, the trial court accurately laid out the evidence before it and resolved the conflicting testimony in reaching its verdict. We will not reverse the defendant's conviction solely because he disagrees with how the trial court judged the witnesses' credibility and resolved the conflicting testimony. See *Sauls*, 2022 IL 127732, ¶ 52.

¶ 23    *Simon* is instructive in reaching our conclusion. In that case, a witness to a shooting testified that "he turned his back to the victim to continue sweeping the rug, only turning back after shots had been fired." *Simon*, 2011 IL App (1st) 091197, ¶ 93. In its ruling, the trial court stated that the witness testified that "he was sweeping the floor as he saw the victim ride up on his bicycle toward the store, *and thereafter the defendant got out and shot him several times and he did not see any gun pointed at the defendant and he did not see any gun whatsoever*." (Emphasis in original.) *Id.* ¶ 90. On appeal, the defendant argued that the emphasized language misstated the witness's testimony and that the trial court erroneously believed that the witness observed the entirety of the shooting. *Id.* In affirming the trial court, the appellate court stated that "[w]hile it is possible to read the trial court's statement that way, it is not the only way to do so. *** [I]t is possible to read the statement as recounting [the witness's] testimony and drawing an inference from that testimony." *Id.* ¶ 95. The appellate court therefore concluded that the trial court did not improperly recall the witness's testimony. *Id.*

¶ 24    Here, too, the trial court properly restated the defendant's testimony and made inferences from the testimony to resolve an apparent conflict between the defendant and T.G. In doing so, the trial court relied on its credibility determinations of the witnesses. Thus, there is no affirmative

mistake in the record. We therefore find that the defendant was not deprived of his right to a fair trial.

¶ 25 The defendant next argues that there was insufficient evidence to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse for touching T.G.'s vagina. In evaluating the sufficiency of the evidence, it is not the province of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Garcia*, 2015 IL App (2d) 131234, ¶ 8. The weight to be given to the witnesses' testimony, the determination of their credibility, and the reasonable inferences to be drawn from the evidence are all matters within the jurisdiction of the trier of fact. *People v. Smith*, 185 Ill. 2d 532, 542 (1999); *Collins*, 106 Ill. 2d at 261-62. Likewise, the resolution of any conflicts or inconsistencies in the evidence is also within the province of the fact finder. *Collins*, 106 Ill. 2d at 261-62. We will set aside a criminal conviction only " 'where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt.' " *People v. Brennan*, 2023 IL App (2d) 220190, ¶ 30 (quoting *Smith*, 185 Ill. 2d at 542).

¶ 26 However, we bear in mind that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); see also *People v. Carpenter*, 228 Ill. 2d 250, 264 (2008). "Simply stated, the fact that defendant is 'probably guilty' does not equate with guilt beyond a reasonable doubt." *People v. Ehlert*, 211 Ill. 2d 192, 213 (2004). If, after a careful examination of the evidence, we "are of the opinion that the evidence is

insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction." *Smith*, 185 Ill. 2d at 541; see also *People v. Hernandez*, 312 Ill. App. 3d 1032, 1036 (2000) ("That is, a criminal conviction cannot stand on appeal if the prosecution's evidence is so weak as to create a reasonable doubt as to defendant's guilt."). Although the determinations of the trier of fact are given great deference, they are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "The positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant." *Sauls*, 2022 IL 127732, ¶ 52.

¶ 27 To prove aggravated criminal sexual abuse, the State must show that the defendant committed "an act of sexual conduct with a victim who is under 18 years of age and the person is a family member." 720 ILCS 5/12-16(b) (West 2010). "Sexual conduct" is defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing of the sex organs or breast of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 12-12. "The intent to arouse or satisfy sexual desires can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct." *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010). "A defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act." *Id.*

¶ 28 Here, the defendant argues that T.G. testified that the defendant did not touch her vagina separate from any act of penetration. A review of her testimony, however, establishes that the defendant touched her vagina. On direct examination, T.G. testified that the massages "slowly moved to touching inappropriately." Her testimony continued:

"Q: And when you say 'moved to touching inappropriately,' are you referencing the touching of your vagina?

A: Yes, and chest."

When asked for more details, T.G. testified that the defendant "touched [her] vagina and put his finger inside [her] vagina." She continued:

"Q. And I just said 'touching your vagina,' and I know that you have identified times that [the defendant] would put his finger inside of your vagina. Were there times where he would just touch or rub on the outside of your vagina versus insert his finger inside?

A. No. He would—there was times where he would put his hand between my legs near my vagina on the outside of my clothes, but he would never rub on the outside."

¶ 29   On cross examination, T.G. testified:

"Q. And you told the State that [the defendant] never touched the top of your vagina or rubbed outside of it; is that correct?

A. Correct.

Q. Okay. And did you tell Dave Smith that he touched on top of your vagina and rubbed the outside of it?

A. Through my clothes, yes, but he never touched—

Q. Okay.

A. —my vagina on the top.

* * *

Q. Did you tell Dave Smith in your conversation in 2021 that he touched the top of your vagina and rubbed the outside of it?

A. Yes.

Q. Okay. And again when you testified here today, you told the State no, that never happened; correct?

A. Outside my clothing.

> Q. Okay. So you told the State no, that never happened; correct?
>
> A. Right."

¶ 30   Though these colloquies between T.G. and the parties' attorneys were perhaps inartful, a victim's testimony "need not be unimpeached, uncontradicted, crystal clear, or perfect." *People v. Foley*, 206 Ill. App. 3d 709, 715 (1990). Despite this, it is apparent from her testimony on both direct- and cross-examination that the defendant touched her vagina outside her clothes.[2]   The State did not need any further evidence to corroborate this. See *Sauls*, 2022 IL 127732, ¶ 52; *People v. Schott*, 145 Ill. 2d 188, 206 (1991) ("[A] victim's testimony no longer needs to be clear and convincing or substantially corroborated for a defendant to be found guilty of a sex offense."). The defendant's intent can be inferred from the sexual nature of the massages. See *Burton*, 399 Ill. App. 3d at 813. Thus, the State proved each of the statutory requirements.

¶ 31   This conclusion is consistent with our holding in *People v. Currie*, 2023 IL App (2d) 220114. In that case, the defendant was convicted of predatory criminal sexual assault of a child. *Id.*, ¶ 22. On appeal, the defendant argued that there was insufficient evidence to prove that he made skin-to-skin contact with the victim's buttocks. *Id.*, ¶ 29. The victim stated on six occasions that the defendant was wearing clothes, or at least underwear. *Id.*, ¶ 45. However, on one occasion the victim stated that the defendant was not wearing clothes at all. *Id.* We held that this one occasion of stating that the defendant was not wearing clothes was sufficient to prove that the defendant made skin-to-skin contact with the victim. *Id.* In doing so, we noted that the

---

[2] We agree with the dissent that T.G. testified that the defendant did not rub her vagina. However, we believe the dissent overlooks that T.G.'s testimony establishes that the defendant did touch her vagina.

inconsistencies in the victim's statements and testimony were brought to the jury's attention, and it was ultimately within the jury's purview to determine that the victim was more credible on the one occasion she said the defendant was not wearing clothes than the multiple occasions she said the defendant was wearing clothes. *Id.*

¶ 32    Here, too, the inconsistencies of T.G.'s statements were brought to the attention of the trial court during closing arguments. The trial court found T.G. to be a credible witness despite these inconsistencies. It was within the trial court's purview as the trier of fact to make such a credibility determination. See *id.* Therefore, we have no basis to upset the trial court's determination, and we conclude that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.

¶ 33                              III. CONCLUSION

¶ 34    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 35    Affirmed.

¶ 36    JUSTICE MULLEN, concurring in part and dissenting in part:

¶ 37    I concur in the judgment as to defendant's claim that he did not receive a fair trial because the trial court misapprehended his testimony, but respectfully dissent as to the conviction of count 4, aggravated criminal sexual abuse for touching the victim's vagina, because I believe the scant testimony related to that count is too vague and inconsistent to constitute proof beyond a reasonable doubt.

¶ 38    This case is similar to *People v. Gonzalez*, 2015 IL App (1st) 132452. In that case, Gonzalez and three co-defendants were charged with reckless conduct based on "throwing bricks while yelling gang slogans to passing vehicles." *Id.*, ¶ 2. At trial, a police officer testified on direct examination that he saw a group of men, including the defendants, holding bricks, throwing

the bricks, and yelling gang slogans. *Id.*, ¶ 4. But, on cross-examination the officer stated that he never saw the defendants throwing the bricks. *Id.*, ¶ 6. On appeal, the conviction was reversed. *Id.*, ¶ 26. The court found that "from the inconsistency and vagueness of [the officer's] testimony, it is unclear whether [the officer] ever saw any one of 'the defendants,' and specifically [Gonzalez], throwing bricks." *Id.*, ¶ 18.

¶ 39    In this case, at the time of the trial, T.G., was 30 years old, married with four children and owned a school. She was abundantly clear and consistent throughout her testimony that the touching by defendant penetrated her vagina. Relevant to count 4 of the indictment, the State needed to prove, among other things, "touching or fondling by [] the accused, either directly or through clothing" of the victim's vagina. 720 ILCS 5/12-12(e) (West 2010). She also told the court that he would touch her "near my vagina," "between my thighs," "around my vagina," and "between my legs." This is not sufficient to establish this count, however, and when the State followed up about whether there were times where the defendant was "just touch[ing] or rub[bing] on the outside of your vagina versus insert[ing] his finger inside," T.G. responded, "No. [] [H]e would never rub on the outside."

¶ 40    On cross-examination, she admitted that *she told the investigating officer* [not the court under oath] that he rubbed her vagina and "through my clothes," but when the defense attorney sought to clarify, there is the—at best—ambiguous exchange related by the majority:

> Q. Okay. And again when you testified here today, you told the State no, that never happened; correct?
>
> A. Outside my clothing.
>
> Q. Okay. So you told the State no, that never happened; correct?
>
> A. Right."

There was no re-direct examination on this issue. Given the inconsistency in the evidence and the vagueness of T.G.'s testimony, we are left to wonder what was meant.

¶ 41   In my view, this evidence is so " 'unsatisfactory as to justify a reasonable doubt of defendant's guilt.' " *People v. Brennan*, 2023 IL App (2d) 220190, ¶ 30 (quoting *Smith*, 185 Ill. 2d at 542). Therefore, I respectfully dissent as to the conviction of count 4.