NOTICE

Decision filed 03/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241317-U

NO. 5-24-1317

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 23-CF-446 |
| | ) | |
| JESSY A. BIALESCHKI, | ) | Honorable |
| | ) | Mitchell K. Shick, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where any rational trier of fact could have found the elements necessary to prove the defendant guilty beyond a reasonable doubt of threatening a public official, we affirm the defendant's conviction.

¶ 2                                I. BACKGROUND

¶ 3   On August 23, 2023, the defendant, Jessy A. Bialeschki, was charged by information with threatening a public official (720 ILCS 5/12-9(a)(1)(i) (West 2022)) and resisting or obstructing a peace officer (*id.* § 31-1(a)(2)). On October 29, 2024, a jury trial commenced on both counts.

¶ 4   At trial, a video of the defendant was admitted into evidence and published to the jury. That video depicted the defendant speaking to the camera for six and one-half minutes, explaining what happened when he went to court for a proceeding concerning his daughter. Judge Jonathan Braden placed the defendant's daughter into the custody of DCFS, and the defendant was granted

1

supervised visits until the conclusion of the case. During the last minute of the video, the defendant noticeably changed the tone and volume of his voice, specifically addressing Judge Braden, shouting:

> "Jonathan Braden, your decision means nothing to me. That is my daughter. You cannot take something from me that you have no right to take. If you have the right to take my daughter, I have the right to take yours. *** You want to make her a ward of the streets? That's my daughter. *** You made the wrong judgment. Fix it! Now! I'm no coward. If this is home of the brave and land of the free, I am the brave and we're going to see how free I be."

The video was posted onto the defendant's Facebook page along with a caption:

> "[A]t this point heaven or hell it don't matter. I feel excused by God no matter [what] I do. Any help fixing this from anybody would be greatly appreciated my daughter nor I deserve this and I promise I'm not laying down I'm going to try to do everything right but I can't promise anything so I'm reaching out for all the help I can get imagine if that was your child."

¶ 5     In addition to the video, the defendant also shared a Facebook post to his timeline. The post stated:

> "The Constitution of the United States gives me the right to bear arms and preserve my rights to protect my rights and preserve my right to protect my rights my daughter's rights and to defend them against all foreign and domestic terrorists and that man violated the Constitution of the United States my right and my daughter's right to freedom and my right to protect my daughter form anything and everything, including a judge that's my daughter my [G]od-given right. Share. Share."

2

¶ 6    Judge Braden testified that he is the resident circuit judge in Cumberland County and handles all juvenile matters. The defendant was a litigant in a case involving child custody. Judge Braden testified that he was visiting with the sheriff in the courthouse on August 21, 2023, when the Cumberland County State's Attorney came in and handed him a transcript from a Facebook video. Judge Braden viewed the video and read the posts with the state's attorney and the sheriff. Judge Braden testified that the defendant's demeanor changed when he directly addressed the judge, and Judge Braden "took [the defendant] at his word." Judge Braden said the video, including the accusation of being a "domestic terrorist," caused him to be in fear of his life and his children's lives. He sent his children to a relative's house and returned home to sit on the couch with a .45 pistol on the coffee table out of fear that the defendant would show up to his residence. Judge Braden also stated that he immediately signed up for classes to get his Concealed Carry License. As a final precaution, Judge Braden had a dossier on the defendant prepared and disseminated to his family and neighbors for them to be aware of what the defendant looked like.

¶ 7    The trial court took judicial notice of the defendant's conviction for felony domestic battery in 2018 at the beginning of the defendant's testimony and provided a limiting instruction to the jury. The defendant testified that he had a custody hearing on August 16, 2023. and posted the video on August 21, 2023. He also made a Facebook post discussing his second amendment right six hours after uploading the video. The defendant testified that he thought his Facebook page was private, and he never had any "intentions for [Judge Braden] ever viewing that video." However, in that video, the defendant specifically addressed "the public" and insisted in his post that people "share" it to their Facebook pages. Despite the fact that the defendant was told that the video could feel "threatening," it remained on his Facebook page along with his post.

3

¶ 8     On cross-examination, the defendant admitted to being angry after the hearing on August 16, 2023, and when he made the posts on August 21, 2023. He also admitted that he could have taken the post down, that he was made aware that the post could be threatening, and that sharing a Facebook post would allow others "outside of [his] friend group" to see it. The State asked the defendant about several types of posts he made over the course of a year, countering his claim of "ineptitude[ ] or in not understanding Facebook." The defendant also admitted that instead of deleting the video after "venting," he consciously posted it on Facebook, differing from his example of writing a letter to someone and then throwing it away.

¶ 9     The jury found the defendant guilty of threatening a public official and resisting or obstructing a police officer. Defense counsel filed a motion for acquittal or in the alternative for a new trial, which was heard and denied. The defendant was sentenced to six years in the Illinois Department of Corrections for threatening a public official and a concurrent 364-day sentence in the Cumberland County jail for resisting or obstructing a police officer. Defense counsel filed a motion to reconsider sentence, which was heard and denied. The defendant timely appealed.

¶ 10                                  II. ANALYSIS

¶ 11    The defendant does not challenge his conviction for resisting or obstructing a peace officer. His only challenge is to the sufficiency of the evidence of the charge of threatening a public official. To sustain a conviction for threatening a public official, the State was required to prove beyond a reasonable doubt that defendant knowingly delivered or conveyed, directly or indirectly, a communication containing a threat that would place the public official or a member of his immediate family in reasonable apprehension of bodily harm, and that the threat was conveyed because of the performance of a public duty. 720 ILCS 5/12-9(a)(1)(i), (a)(2) (West 2022). In reviewing the sufficiency of the evidence, this court considers whether, viewing the evidence in

4

the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of guilt. *Id.*

¶ 12    Defendant's principal contention on appeal is that the State failed to establish that he knowingly delivered or conveyed a "threat" to Judge Braden, because he did not intend for the Facebook posts to reach the judge and believed his account was private. He argues that, under *People v. Garcia*, 2015 IL App (2d) 131234, ¶ 10, the State was required to prove that he knew his statements would be conveyed to their target and that no such proof was presented.

¶ 13    The evidence presented at trial, however, was sufficient to permit the jury to conclude that defendant knowingly conveyed a threat, either directly or indirectly, to Judge Braden. The video posted on defendant's Facebook page expressly named Judge Braden and accused him of wrongdoing in connection with the custody proceedings. Toward the end of the video, defendant stated: "If you have the right to take my daughter, I have the right to take yours," and demanded that the judge "fix" his decision. These statements were accompanied by an aggressive change in tone and volume and were followed by a written post invoking defendant's right to bear arms and asserting his right to protect his daughter "from anything and everything, including a judge."

¶ 14    The jury also heard evidence that defendant intentionally posted these statements on Facebook, a social media platform designed for public or semi-public communication, rather than confining his comments to private correspondence. Defendant admitted that he consciously chose to post the video instead of keeping his thoughts private. He further acknowledged that he addressed Judge Braden by name and referred to the judge's daughter in the video. Indeed, this section of the video was particularly chilling. It is ludicrous to contend that in today's social media

5

centered world, a Facebook threat to a presiding judge in a pending custody case could not reach its intended target.

¶ 15    Although defendant testified that he believed his Facebook account was private, the jury was not required to accept that testimony. See *Jackson*, 232 Ill. 2d at 280-81. The evidence showed that defendant had more than a hundred Facebook friends and had previously used the platform to communicate broadly. Further, in his second post, defendant explicitly encouraged others to "share" his message, demonstrating an awareness that his statements could be disseminated. Defendant also admitted that he was informed that his posts could be perceived as threatening and nevertheless left them online. A rational trier of fact could reasonably infer from this evidence that defendant was at least practically certain that his statements would be conveyed to Judge Braden, particularly given that the posts concerned an ongoing court case and were directed at the judge by name.

¶ 16    In support of his argument, the defendant relies upon *People v. Wood*, 2017 IL App (1st) 143135. There, the defendant left a message at a public defender's office without any indication that he intended or expected it to reach the judge. Here, by contrast, defendant publicly posted statements naming Judge Braden and challenging his judicial decision in a highly charged context. Unlike in *Wood*, defendant's statements were not made in a setting unrelated to the judge but were instead disseminated in connection with an active case over which Judge Braden presided. Judge Braden testified that he took defendant's statements seriously, feared for his and his family's safety, and took significant protective measures, including relocating his family and arming himself. While the victim's subjective reaction is not dispositive, it is relevant to whether the communication was reasonably perceived as threatening.

¶ 17    When viewed in the light most favorable to the State, the evidence permitted a rational jury to find that defendant knowingly conveyed a true threat to Judge Braden and that the threat was related to the judge's official actions. The jury was entitled to disbelieve defendant's claim that he did not intend or expect his statements to reach the judge and to draw reasonable inferences from his conduct and the circumstances surrounding the posts.

¶ 18                                III. CONCLUSION

¶ 19    Based upon our review of the entire record, we find the evidence was sufficient to sustain the defendant's conviction for threatening a public official, and the judgment of the circuit court is affirmed.


¶ 20    Affirmed.